UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Andrew Marshall McElrath,<br><br>　　　　　　　　　Plaintiff,<br><br>v.<br><br>Chris Golden, Clay Conyers, Anthony Cotton, Thomas Burgess, Christopher Voll, Sheriff John Skipper, Lt. Chris Vaughn, HA Barnett, all in their individual and official capacities, and Anderson County Sheriff's Office,<br><br>　　　　　　　　　Defendants. | C/A No. 8:14-cv-00785-BHH-KDW<br><br><br>Report and Recommendation |

　　　　Plaintiff, proceeding pro se, brought this civil rights action pursuant to 42 U.S.C. § 1983, alleging violations of his constitutional rights. This matter is before the court on Plaintiff's Motion for Partial Summary Judgment, ECF No. 115, filed on October 3, 2014 and Defendants' Motion for Summary Judgment filed on October 31, 2014, ECF No. 123. As Plaintiff is proceeding pro se, the court entered a *Roseboro*[1] order on November 3, 2014, advising Plaintiff of the importance of such motions and of the need for him to file adequate responses. ECF No. 125. Defendants responded to Plaintiff's Motion on October 31, 2014, ECF No. 124, and Plaintiff replied on November 6, 2014, ECF No. 128. Plaintiff responded to Defendants' Motion for Summary Judgment on November 12, 2014, ECF No. 131, and Defendants replied on November 24, 2014, ECF No. 138. These Motions are now ripe for consideration. This case was referred to the undersigned United States Magistrate Judge for all pretrial proceedings pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Civil Rule 73.02(B)(2)(d) and

---

[1] *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975) (requiring the court provide explanation of dismissal/summary judgment procedures to pro se litigants).

(e), D.S.C. Because this motion is dispositive, a Report and Recommendation is entered for the court's review.

I.      Factual and Procedural Background

Andrew Marshall McElrath (*"Plaintiff"*) is currently incarcerated within the South Carolina Department of Corrections (*"SCDC"*). In his Complaint, he asserts that he escaped from the Wateree prison facility in Sumter County, South Carolina on December 8, 2012. ECF No. 1 at 4. Plaintiff maintains he was re-arrested at his ex-girlfriend's home in Anderson County on December 11, 2012. *Id.* Plaintiff maintains that his ex-girlfriend cooperated with investigators from SCDC who worked with Anderson County Sheriff's Department to apprehend him. *Id.* When Plaintiff entered the home, he maintains that two or three SCDC investigators "came out of the bathroom with guns drawn yelling for [him] to get down on the ground before they shoot [him]." *Id.* at 5. Plaintiff alleges that he followed the officers' commands, laid face down, and placed his hands behind his back. *Id.*

Once he was on the ground, Plaintiff alleges that all SCDC officers who were outside the house came inside and placed handcuffs on him without any resistance by Plaintiff. *Id.* at 6. Plaintiff further alleged:

> They all start beating [him] while the Anderson county sheriff deputies stood just outside the home and watch and never make any effort to stop this unlawful/unprovoked assault on [Plaintiff] by the SCDC investigators[.] One stood on [his] neck and stomped [his] face/head into the floor and it crushed both cheeks, crush[ed his] nose, knocked out a few teeth and crushed surrounding bone structure around both eyes from temple to temple all way across [his] face while the others were kicking [him] in the ribs/stomach area and droping knees on [his] spinal cord while one of them held [his] legs crossed and folded toward [his] butt area then after this they all took turns punching [him] in the back and top side of [his] head while Chris Golden forced [his] hands over [his] head from behind [his] back while in cuffs causing [his] shoulder to break and arm also along with all surrounding muscle tissue and nerve damage in [his] back/neck/shoulder area and also caused internal injur[ies]. . . .

*Id.* at 6-7. Plaintiff maintains that the officers called EMS to the scene after he made several requests for medical care. *Id.* at 7. However, Plaintiff alleges that his eyes had swollen shut, "leaving [him] blind at that time having no idea EMS was ever on scene." *Id.* Plaintiff further alleges that the SCDC investigators tricked him into signing an "EMS refusal pad," when Plaintiff thought he was signing an order "to allow them to transport [Plaintiff] to the hospital." *Id.* Plaintiff alleges that the SCDC officers did this so that no records of his injuries would exist. *Id.*

From the SCDC Defendants, Plaintiff seeks $1,000,000 in compensatory damages or $500,000 in compensatory damages and allowance of a "guilty plea on all pending changes in S.C. with a sentence of no more than 3 years imprisonment allowing [him] credit for the 2 years [he has] already done meaning time served." *Id.* at 8. From the Anderson County Sheriff's Office Defendants, Plaintiff seeks $250,000 in compensatory damages or $125,000 in compensatory damages and an allowance of "a time served sentence on any/all remaining charges within Anderson County." *Id.*

II.     Standard of Review

The court shall grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant bears the initial burden of demonstrating that summary judgment is appropriate; if the movant carries its burden, then the burden shifts to the non-movant to set forth specific facts showing that there is a genuine issue for trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). If a movant asserts that a fact cannot be disputed, it must support that assertion either by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including

3

those made for purposes of the motion only), admissions, interrogatory answers, or other materials;" or "showing . . . that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

In considering a motion for summary judgment, the evidence of the non-moving party is to be believed and all justifiable inferences must be drawn in favor of the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* at 248. Further, while the federal court is charged with liberally construing a Complaint filed by a pro se litigant to allow the development of a potentially meritorious case*, see, e.g.*, *Cruz v. Beto*, 405 U.S. 319, 322 (1972), the requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts that set forth a federal claim, nor can the court assume the existence of a genuine issue of material fact when none exists. *Weller v. Dep't of Soc. Servs.*, 901 F.2d 387, 391 (4th Cir. 1990).

  III. Analysis

    1. Defendants' Motion for Summary Judgment

      A. Failure to State a Cause of Action Against Certain Defendants

Defendants contend that Plaintiff has failed to state a cause of action against the Anderson County Sheriff's Office ("ACSO") Defendants. ECF No. 123-1 at 2-3. Defendants maintain that only Lt. Chris Vaughn and Deputy H. A. Barnett from the ACSO were involved in assisting the Special Investigations Unit of SCDC in apprehending Plaintiff. ECF No. 123-1 at 3. Further, Defendants contend that Defendants Vaughn and Barnett were not present at the residence where Plaintiff was apprehended. *Id.* Therefore, Defendants argue that all Defendants,

4

other than Defendants Conyers and Golden are entitled to summary judgment on Plaintiff's claims because no one from the ACSO used any force in arresting, restraining or transporting Plaintiff. *Id.* Plaintiff does not specifically respond to Defendants' first argument in his Response. ECF No. 131.

In support of their Motion for Summary Judgment, Defendants offer the affidavit of Defendant Vaughn. Vaughn Aff., ECF No. 123-2. At the time of Plaintiff's escape, Defendant Vaughn worked as a Deputy Sheriff for Anderson County and served as the supervisor for Delta Shift. *Id.* ¶¶ 1-2. Believing that Plaintiff was in the Anderson area, SCDC contacted ACSO and informed ACSO that Plaintiff had escaped on December 8, 2012. *Id.* ¶¶ 3-4. Defendant Vaughn attests that he and Defendant Barnett assisted SCDC by "being on the lookout for a white work van that the Plaintiff was reported to be driving [and] communicat[ing] the Plaintiff's description to the other members of Delta Shift." *Id.* ¶ 5. Defendant Vaughn further attests that no one from ACSO was "in the residence" or "present at the residence when the Plaintiff was captured." *Id.* ¶ 7. Finally, Defendant Vaughn reiterates that "no one from ACSO was present when Plaintiff was captured, [and therefore] no one from ACSO used any force in arresting, restraining, or transporting the Plaintiff." *Id.* ¶ 8.

In his Complaint, Plaintiff alleges that officers from ACSO stood outside the home where Plaintiff was apprehended and never made an effort to stop SCDC officers from assaulting him. ECF No. 1 at 6-7. However, no evidence indicates that any officer from ACSO was inside the home where Plaintiff was apprehended or present at the location. In addition to the affidavit mentioned above, an incident report written by Officer Barnett indicates that Plaintiff was already in custody when Defendants Barnett and Vaughn arrived at the scene. ECF No. 1-1 at 5. Specifically, the incident report provides: "Upon my arrival I made contact with Investigator C.

Coleman who had located and placed [Plaintiff] in custody for charges involving their case.*" Id.* Therefore, the undersigned finds that no evidence demonstrates that any member of ACSO was present when Plaintiff was apprehended. Further, no evidence demonstrates that any member of ACSO contributed to or unlawfully failed to prevent the alleged unauthorized use of force of Plaintiff during his arrest. Accordingly, the undersigned recommends dismissing Defendants Sheriff John Skipper, Lt. Chris Vaughn, HA Barnett, and ACSO from this action.

### B.  Remaining SCDC Division of Investigation Defendants

Defendants maintain that Plaintiff has failed to allege sufficient facts against Defendants Cotton, Burgess, and Voll to constitute a cause of action against them. ECF No. 123-1 at 4. The undersigned agrees. Defendants' affidavits demonstrate that only Defendants Golden and Conyers were involved in placing Plaintiff under arrest and securing him inside the informant's home. ECF Nos. 123-3; 123-4. No other evidence demonstrates that any other SCDC officer was inside the informant's home during Plaintiff's apprehension. Furthermore, in his Complaint, Plaintiff maintains that *"*2 or 3 of the 5 SCDC investigators were hiding inside the home in the restroom area with the door closed and light off. . . .*"* ECF No. 1 at 5. Therefore, the undersigned recommends granting Defendants' Motion for Summary Judgment concerning the remaining SCDC Division of Investigation Defendants and dismissing Defendants Cotton, Burgess, and Voll from this action.

### C.  Constitutional Violations

#### i.)  Eighth Amendment Analysis

Defendants argue that Plaintiff's Complaint fails to state a claim for an Eighth Amendment Violation. ECF No. 123-1 at 4. Specifically, Defendants maintain that the amount of force utilized in this case was *"*necessary to apprehend [] Plaintiff without harm to members of

the public or the Defendants." *Id.* Defendants contend that affidavits submitted with their Motion indicate that Plaintiff told their informant that "if she was setting him up, he would kill her son in front of her and then kill her." *Id.* at 5. Further, Defendants maintain that Plaintiff failed to comply with their orders instructing Plaintiff to "Get on the floor!" and "Plaintiff placed his hands and forearms underneath him and refused to allow himself to be cuffed." *Id.* Defendants admit to striking Plaintiff's back and side while he continued to refuse arrest but argue they did not strike Plaintiff after "he complied and allowed himself to be cuffed." *Id.* In his Response, Plaintiff requests that the court review the photos and CDs that he obtained from SLED which he alleges show multiple wounds caused by Defendants. ECF No. 131-1 at 2.

The photographs Plaintiff submitted demonstrate Plaintiff sustained two black eyes and multiple lacerations about his face during his apprehension.[2] Additionally, medical records indicate Plaintiff was brought to Broad River SMU after the escape, and a December 11, 2012 medical encounter demonstrates that Plaintiff was:

> ambulatory with limp gait. . . . several bruising and scars to facial area. Bilateral eyes swollen and discolared (sic) Right eye very red. Redness noted to top of head. Bridge of nose with abrasion. Noted [Plaintiff] hold the left side of back. [Plaintiff] stated that the police put their knees in that spot. Back examined, skin intacted, very tender to touch to left lower back, no swelling, bruising, active bleeding, or drainage noted to site. [Plaintiff] rates 10/10 on a 0-10 pain scale. [Plaintiff] denies pain to facial area at this time. Plaintiff believes his ribs might be broken.
> Facial area was cleansed with soap and water. Several scabs to facial area, dried blood noted in bilateral nasal passages from previous nose bleed.

ECF No. 123-14 at 24. Plaintiff complained of chest pains in later medical encounters. *Id.* at 23. In a December 17, 2012 medical encounter, "bilateral circular bruises to [Plaintiff's] eyes" were noted, and Plaintiff indicated he thought his ribs were broken. *Id.* Further, Plaintiff stated that his left lower side just above the hip area was painful. *Id.* A January 4, 2013 medical encounter

---

[2] *See* ECF No. 63 granting Plaintiff's Motion to transfer evidence—two CDs—from case No. 5:13-317-MGL-KDW, to this case.

indicated that Plaintiff complained of having chest pain and coughing up blood. *Id.* Additionally, it was noted that the *"*left side of chest (location of lower rib cage) noted with indention, painful to touch. . . .[Plaintiff] states he is in pain when breathing in and out. Rates pain 8/10 on a 0-10 scale.*" Id.* Other medical encounters demonstrate Plaintiff's continued medical treatment following his apprehension. A medical record from Imagecare, LLC with an examination date of January 16, 2013 indicates that a clinical history of *"*left-sided rib pain,*"* and *"*Findings of old dislocated distal right clavicle fracture are noted.*"* ECF No. 1-1 at 13. This record also describes the fracture as *"*nonhealed.*" Id.*

In support of their Summary Judgment Motion, Defendants maintain that Plaintiff refused medical treatment following his arrest even though EMS was called to the scene. ECF No. 123-1 at 7. Further, Defendants maintain that Plaintiff declined medical attention and stated: *"*If I can get me a cigarette and I'll be fine.*" Id.* (citing ECF No. 123-4, 123-5). Plaintiff maintains that he did not receive medical attention on the day he was apprehended because his eyes had swollen shut, leaving him blind and unable to notice EMS ever arrived. ECF No. 1 at 7.

The Eighth Amendment prohibition of cruel and unusual punishment *"*protects inmates from inhumane treatment and conditions while imprisoned.*" Williams v. Benjamin*, 77 F.3d 756, 761 (4th Cir. 1996). To establish a constitutional excessive force claim, the inmate must establish that the *"*prison official acted with a sufficiently culpable state of mind (subjective component); and [that] the deprivation suffered or injury inflicted on the inmate was sufficiently serious (objective component).*" Iko v. Shreve*, 535 F.3d 225, 238 (4th Cir. 2008) (citing *Williams*, 77 F.3d at 761). Thus, courts must analyze both subjective and objective components.

For the subjective component, Plaintiff must prove that Defendants assaulted him during the course of his re-arrest *"*maliciously and sadistically for the very purpose of causing harm*"*

rather than in a good-faith effort to apprehend him. *Whitley v. Albers*, 475 U.S. 312, 320-21 (1986). The Supreme Court has identified the following four factors to consider when determining whether a prison official's actions were carried out "maliciously and sadistically" to cause harm: (1) the need for application of force; (2) "the relationship between the need and the amount of force" used; (3) "the extent of the injury inflicted"; and (4) "the extent of the threat to the safety of staff and inmates as reasonably perceived by the responsible officials on the basis of the facts known to them." *Id.* at 321.

According to Plaintiff's version of facts, an unnecessary and unlawful assault occurred during and after his re-arrest. In addition to his restatement of the facts, Plaintiff submits the affidavit of Johnny Fields, Plaintiff's accomplice, who attests that he witnessed an assault on Plaintiff "after [Plaintiff] laid down on his o[w]n free will and place[d] his hands behind his back inside the home without any resist (sic) at all from him the 4 SCDC investigators place handcuffs on him and physically attack him by kicking him and punching him and stomping his head into the concrete floor. . . ." ECF No. 110-1. Fields attests that he witnessed this as he sat in the "van that was park[ed] directly in front of the entrance of the home which was left wide open by [Plaintiff] as he entered the home. . . ." *Id.* Moreover, as evidenced by medical records and pictures, Plaintiff suffered injuries that appear to be consistent with the assault he described occurred. ECF No. 123-14.

With regards to the subjective component in an excessive force claim, the undersigned finds that Plaintiff has offered sufficient evidence to demonstrate that a genuine issue of material facts exists concerning whether Defendants Golden and Conyers used force for the very purpose of causing harm when apprehending Plaintiff and/or after Plaintiff was in custody. Additionally, the undersigned has considered the four factors of the objective test and notes that though force

may have been needed to apprehend Plaintiff, the amount of force that was used inflicted more than a *de minimus* injury on Plaintiff, even considering the officers' need to protect themselves and their informant. *See Hill v. Crum*, 727 F.3d 312, 318 (4th Cir. 2013). Accordingly, the undersigned recommends that the court deny Defendants' Motion for Summary Judgment regarding Plaintiff's cause of action for excessive force in violation of his Eighth Amendment rights.

          ii.)     Fourth Amendment Analysis

Though Defendants analyze Plaintiff's excessive use of force claim under an Eighth Amendment analysis, another approach would be for the court to analyze Plaintiff's cause of action as a Fourth Amendment violation. *See e.g., Pethtel v. W. Virginia State Police*, 568 F. Supp. 2d 658, 667 (N.D.W. Va. 2008) *aff'd*, 359 F. App'x 390 (4th Cir. 2009) (analyzing an excessive force claim for a defendant who escaped house arrest while awaiting trial under the Fourth Amendment); *Miller v. City of Columbus*, No. 2:05-CV-425, 2007 WL 915180, at *10 (S.D. Ohio Mar. 26, 2007) (applying the Fourth Amendment's objective reasonableness standard and noting that other federal appellate and district courts have not applied the Eighth Amendment to persons who are not incarcerated or imprisoned at the time of the encounter despite the plaintiff's status as a parolee); *but see Gravely v. Madden*, 142 F.3d 345, 348 (6th Cir. 1998) (holding the Fourth Amendment is not triggered anew by attempts at recapture because the convict has already been "seized," tried, convicted, and incarcerated); *Foster v. Carroll Cnty., Miss.*, No. 4:09-CV-127-SA-JAD, 2011 WL 4386412, at *2 (N.D. Miss. June 23, 2011) (analyzing escapee's claim using the Fourth Amendment's more generous standard from the viewpoint of a § 1983 plaintiff but noting plaintiff's claim can only arise under the Eighth Amendment).

10

In his Complaint, Plaintiff does not indicate which of his constitutional rights was violated.[3] However, because Plaintiff was not technically in SCDC's custody when officers apprehended him whether law enforcement officers used excessive force when making an arrest could also be analyzed under the Fourth Amendment and its "reasonableness" standard. *See Graham v. Connor,* 490 U.S. 386, 395 (1989). The *Graham* Court discusses seizure of a "free citizen" in the context of an arrest or investigatory stop and holds that the protections of the Fourth Amendment guarantees citizens the right "to be secure in their persons ... against unreasonable ... seizures" of the person. *Id.* at 394. Furthermore, the Court held that "its proper application requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* at 396. Though Plaintiff was not a free citizen during his apprehension, other factors, like Plaintiff's threat to the Defendants' and their informant's safety as well as whether Plaintiff was actively resisting arrest should be weighed in the context of his re-arrest. These factors would not be at issue in the context of an excessive force claim in a prison setting. Therefore, based on Plaintiff's non-custodial status and public safety factors that Defendants had to consider during his apprehension, the Fourth Amendment approach is a viable option for analysis.

The standard of review is an objective one, and the question is whether a reasonable officer in the same circumstances would have concluded that a threat existed justifying the particular use of force. *Anderson v. Russell*, 247 F.3d 125, 129 (4th Cir. 2001). "[T]he '*reasonableness*' of a particular use of force must be judged from the perspective of a reasonable

---

[3] In his Response to Defendants' Motion Plaintiff notes that he "has already proven his U.S. Const. 8th Amendment right to be free from cruel and unusual punishment has been violated." ECF No. 131-1 at 4.

officer on the scene, rather than with the 20/20 vision of hindsight." *Id.* (internal citations omitted). The *Graham* Court instructed that a reviewing court must make "allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving." 490 U.S. at 397. "The court's focus should be on the circumstances at the moment force was used and on the fact that officers on the beat are not often afforded the luxury of armchair reflection." *Elliott v. Leavitt*, 99 F.3d 640, 642 (4th Cir. 1996) (citations omitted).

The evidence demonstrates that Defendants Conyers and Golden reasonably perceived that Plaintiff posed a threat to their safety and the safety of their informant. *See* ECF Nos. 123-3, 123-4. However, there is conflicting evidence regarding the amount of force used to apprehend Plaintiff. In an affidavit submitted with Defendants' Motion, Defendant Conyers avers that Defendant Golden "took [] Plaintiff to the floor" after Plaintiff refused to comply with their directives. Conyers Aff. ¶¶6-7, ECF No. 123-3. Additionally, Defendant Conyers avers that he "gave [] Plaintiff hand strikes to the back and side" after Plaintiff "refused to allow himself to be cuffed." *Id.* ¶7. Defendant Conyers maintains that he and Defendant Golden "did not know if [] Plaintiff had any weapons and we were attempting to get Plaintiff's hands from under him to be cuffed." *Id.* Once Plaintiff was "cuffed," Defendant Conyers avers that Plaintiff "was not struck" again. *Id.* ¶8.

In his affidavit, Defendant Golden avers that he and Defendant Conyers yelled for Plaintiff to "Get on the ground now!" once Plaintiff entered their informant's residence. Golden Aff. ¶8, ECF No. 123-4. Defendant Golden maintains that they "did not know if [] Plaintiff was armed and he made a movement with his hands toward his pockets. He then began backing up." *Id.* Defendant Golden states he then "grabbed [] Plaintiff in a headlock and took him to the

12

floor." *Id.* ¶9. Additionally, Defendant Golden avers that "Plaintiff had both arms and hands under him and was resisting being restrained." *Id.* ¶9. Further, Defendant Golden states that he "gave several closed hand strikes about [] Plaintiff's head and [Defendant] Conyers gave closed hand strikes to [] Plaintiff's middle torso area. *Id.* Once Plaintiff gave up and was handcuffed, Defendant Golden maintains that Plaintiff was not hit and no other force was used. *Id.* ¶12.

Under the objective reasonableness test, the question is whether a reasonable officer in the same circumstances would have concluded that a threat existed justifying the particular use of force. According to Plaintiff's and his accomplice's version of facts, an unjustified amount of force was used during and after his re-arrest. Plaintiff has offered sufficient evidence to demonstrate that a genuine issue of material fact exists concerning whether Defendants Golden and Conyers used more force than was necessary as perceived from a reasonable officer standpoint in the same circumstances. Accordingly, if analyzed under the Fourth Amendment framework, the undersigned recommends that the court deny Defendants' Motion for Summary Judgment regarding Plaintiff's cause of action for excessive force.

### D.  Qualified Immunity

Defendants assert that they are entitled to qualified immunity on Plaintiff's claims. ECF No. 123-1 at 8-9. Specifically, Defendants argue that assuming "Plaintiff's allegations illustrate a deprivation of constitutional rights, the preceding discussions show that it would not be clear to a reasonable officer in those circumstances." *Id.* at 9.

The Supreme Court in *Harlow v. Fitzgerald* established the standard that the court is to follow in determining whether a defendant is protected by this immunity. That decision held that government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or

constitutional rights of which a reasonable person would have known. *Harlow*, 457 U.S. 800, 818 (1982).

When evaluating a qualified immunity defense, the court must determine (1) whether the facts alleged, taken in the light most favorable to the plaintiff, show that the defendants' conduct violated a constitutional right, and (2) whether that right was clearly established at the time of the alleged misconduct. *Pearson v. Callahan*, 555 U.S. 223, 230-33 (2009). The two prongs of the qualified immunity analysis may be addressed in whatever order is appropriate given the circumstances of the particular case. *Id.* at 236. In determining whether the right violated was clearly established, the court defines the right "in light of the specific context of the case, not as a broad general proposition." *Parrish v. Cleveland*, 372 F.3d 294, 301-03 (4th Cir. 2004). "If the right was not clearly established in the specific context of the case—that is, if it was not clear to a reasonable officer that the conduct in which he allegedly engaged was unlawful in the situation he confronted—then the law affords immunity from suit." *Id.* (citations and internal quotation omitted).

The record before the court shows that these Defendants performed the discretionary functions of their respective official duties. However, as previously addressed, the undersigned finds that whether Defendants Conyers and Golden performed those functions in an objectively reasonable fashion remains a question of fact, and Plaintiff's constitutional rights were clearly established at the time Defendants acted. Thus, to the extent the district judge finds that a constitutional violation occurred, the undersigned recommends that these Defendants not be granted qualified immunity.

2. Plaintiff's Motion for Summary Judgment

On October 3, 2014, Plaintiff filed a Motion for Partial Summary Judgment. ECF No. 115. Therein, Plaintiff asked the court to grant him summary judgment because the evidence he presented, including photographs, demonstrate that there are no genuine disputes regarding material facts, and he is entitled to judgment as a matter of law. *Id.* at 2. The undersigned disagrees. As discussed in the section above, a genuine issue of material fact exists regarding whether SCDC officers used an unreasonable amount of force under the circumstances. Further, there are several facts in dispute, including whether Plaintiff resisted arrest or complied with the officers' directives. Accordingly, the undersigned recommends that Plaintiff's Motion for Summary Judgment, ECF No. 115, be denied.

IV.     Conclusion and Recommendation

Based on the foregoing, it is recommended that Defendants' Motion for Summary Judgment, ECF No. 123, be GRANTED IN PART as to Defendants Cotton, Burgess, Voll, Skipper, Vaughn, Barnett, and the Anderson County Sheriff's Office, AND DENIED IN PART as to Defendants Golden and Conyers. The undersigned further recommends that Plaintiff's Motion for Summary Judgment, ECF No. 115, be DENIED.

IT IS SO RECOMMENDED.

February 13, 2015                                                                     Kaymani D. West
Florence, South Carolina                                                        United States Magistrate Judge

**The parties are directed to note the important information in the attached "Notice of Right to File Objections to Report and Recommendation."**